## MACKENZIE *v.* FLANNERY & COMPANY.

1. Where to an affidavit to foreclose a landlord's lien for supplies, under ₰₰1978, 1991 of the code, the defendant, in addition to his counter-affidavit, filed an equitable plea, in which he set up other matters of account between the plaintiffs and himself not arising from the relation of landlord and tenant, and prayed for a general accounting, for the cancellation of certain deeds and the delivery of collateral securities, and for an injunction and the appointment of a receiver and an auditor, and the plaintiffs filed an equitable answer to this plea, and all matters of account involved were referred to an auditor, the case was changed from an ordinary statutory proceeding to enforce a landlord's lien into an equitable proceeding, and the mode of trial as to the whole was not legal but equitable. Consequently, where exceptions of law and fact were filed to the findings of the auditor, it was not the right of either party to have the exceptions of fact tried by a jury, but it was the duty of the judge, under the act of October 16th, 1885, to examine the report of the auditor, and if it did not appear to him that error had been committed, to approve the report and dismiss the exceptions, and have a verdict taken in accordance with the findings of the auditor.

2. The jurisdiction of the auditor was not confined to matters involved in the proceeding to enforce a landlord's lien, the whole case in the matter of accounting, as presented by the pleadings, having been submitted to him.

3. The proper remedy to enforce a landlord's lien, under section 1978 of the code, for supplies furnished, is that prescribed in section 1991, and not a distress warrant; and under the latter section, the affidavit to foreclose the lien may be made before the ordinary of the county.

4. After the auditor had made his findings and filed his report as to the matters of account between the parties, including the claim set up in the affidavit to foreclose a landlord's lien, and the judge had approved the report and dismissed the exceptions thereto, there was no error in the refusal of the court to dismiss the affidavit for want of proper averments, nor in the refusal to allow the defendant to amend his counter-affidavit by alleging that any indebtedness of any kind due the plaintiffs was due them as cot-

ton factors and not as landlords. Nor did the court' err in refusing to allow him to amend the counter-affidavit by alleging that all indebtedness of every kind due the plaintiffs at the date of the counter-affidavit had since been paid off and discharged from collections made by them of collateral securities placed in their hands to secure such indebtedness, there being no suggestion of any payment after the investigation before the auditor. If any payments have been realized since the report of the auditor, they may be credited on the decree, as provided by his report.

5. To take eight per cent. interest in advance by way of discount on short loans in the usual and ordinary course of business, is not usurious, under section 2050 of the code, if the contract be in writing; but if it is not in writing, no higher rate than seven per cent. ean be taken.

6. A contract by which one of the parties agrees to ship to the other, who is a cotton factor and commission merchant, a certain number of bales of cotton within a stipulated period, or in default thereof to pay to the other $1.00 per bale for every bale short of that number, is not *per se* usurious.

7. The evidence taken before the auditor and by reference made a part of his report, not having been sent up in the record, this court cannot determine that the court below erred in overruling exceptions of fact to the auditor's report, nor in overruling exceptions to findings of law, the correctness of which depends upon the existence of particular facts which might have been established by the evidence.

8. Damages for an excessive levy made in the statutory proceeding, referred to the auditor as a part of the subject-matter of accounting, arose *ex delicto*, and were not a proper element to be embraced in the account taken by the auditor.

9. Unless the fees of the auditor have been fixed by agreement of the parties, it is proper for the court to render a judgment in his favor, fixing his compensation and determining, according to its discretion, in what proportion it shall be paid by the respective parties, or whether the whole shall be paid by one of the parties.

10. Where a petition is filed on the equity side of the court praying a general accounting between the parties, and the matter is referred to an auditor, he may find a balance in favor of the defendant, without any special prayer in his pleadings for a decree in his behalf. Hence, where the defendant in a statutory proceeding to foreclose a landlord's lien for supplies, filed, in addition to his counter-affidavit, an equitable plea praying for a general accounting and offering to do equity and to pay the landlord whatever might be found to be due him, the auditor could find a balance in favor of the landlord, without any prayer in his pleadings for a decree in his behalf.

11. Where a sole defendant in a proceeding at law files an equitable plea and in the same seeks an accounting between the plaintiffs and a firm of which he alleges himself to be the sole member having a substantial interest in its assets, and the accounting is had, a finding by the auditor of a balance against the firm may·be treated as a finding against this one partner, using the firm name as his own name, and a decree may be had accordingly, although the other member of the firm is not a party before the court.

November 21, 1892.

Landlord's lien. Equitable plea. Auditor's report. Jury trial. Practice. Amendment. Interest and usury. Discount. Cotton factor. Evidence. Damage. Auditor's fee. Partnership. Before Judge RONEY. Burke superior court. May term, 1892.

LOVETT & DAVIS and F. H. MILLER, for plaintiff in error.

J. J. JONES & SON, P. P. JOHNSTON and J. R. LAMAR, *contra.*

SIMMONS, Justice.

On September 22, 1890, John Flannery & Co. filed their affidavit to foreclose a landlord's special lien· against J. H. Mackenzie for supplies furnished, amounting to $1,819.68. To the execution issued upon this affidavit, the defendant interposed a counter-affidavit upon the ground that the plaintiffs had no lien against him as landlords. On October 4, 1890, the defendant filed also an equitable defence, in which he alleged, among other things, that in 1887 he did business with the plaintiffs as his commission merchants, they furnishing him large amounts of money and he shipping them large amounts of cotton to be disposed of on his account; that in April, 1888, he notified them that he had formed a copartnership, and thereafter the account would be run in the firm name of J. H. Mackenzie & Co., and that the plaintiffs accordingly transferred to the account of his said firm the balance then claimed as due by the defendant; that this firm dissolved and the affairs between it

and the plaintiffs remained unsettled, and that its business
and accounts had been assigned and transferred to the
defendant individually, by consent of the plaintiffs; that
the deeds under which the plaintiffs claimed to be land-
lords grew out of these transactions, having been given
them by the defendant only to secure the debts of the
firm; that the debts were usurious and the deeds void,
and the plaintiffs were not his landlords; that the trans-
actions in question ran through several years and
amounted to several hundred thousands of dollars, and
that upon a proper accounting the defendant would owe
the plaintiffs nothing. He prayed an injunction against
the plaintiffs and the sheriff; that the sheriff be ap-
pointed receiver of the personalty levied on, and of the
securities pledged by the defendant to the plaintiffs;
that an auditor be appointed to ascertain and decide
upon the just indebtedness due by the defendant, if any,
a full accounting and settlement being prayed for; that
the deeds referred to be declared void for want of con-
sideration and for usury; and that the collateral notes
in the hands of the plaintiffs be delivered to the defend-
ant, unless the same be found necessary to pay a just
claim against him, and if necessary, they be credited to
him at their true value. He offered to do equity and to
pay or secure to plaintiffs what he might justly owe
them, and stated that if upon a just accounting it should
be shown that he is indebted to the plaintiffs $13,000,
he is willing that the land shall stand as security for
that sum, or if the indebtedness be not so much, for
whatever amount may be due according to a contract pro-
posed by the plaintiffs, which is set out elsewhere in the
plea. He prayed that the land embraced in the deeds
under which the plaintiffs claimed as landlords, be de-
creed to be his property, if upon a full and fair account-
ing it should be shown that he had paid the plaintiffs
by the transfer of other property and by collections from

v 90-38

other sources. He also prayed judgment against the plaintiffs for illegal levies made in the proceeding to enforce their lien as landlords.

Upon this equitable defence the judge granted a rule to show cause why the relief prayed for should not be granted. The plaintiffs made a response, and on the hearing it was ordered that the prayer for injunction, receiver and the appointment of an auditor be refused. In their answer the plaintiffs replied in detail and at considerable length to the allegations of the defendant's plea, and among other things stated that "the amount of plaintiffs' claim and the correctness thereof against J. H. Mackenzie & Co. have been admitted in writing by the defendant, and the balance now due the plaintiffs is $11,377.78, besides interest, and such attorney's fees as they may hereafter be entitled to charge under the contract, on collection of balance due."

The case was afterwards referred to an auditor, and the auditor made his report, which appears at length in the record; but the evidence which was introduced before him is not a part of the record in this court. To this report the defendant filed a number of exceptions, dividing them into matters of law and errors of fact. The defendant moved to recommit the case to the auditor for report on two grounds, and, subject to this motion, to disapprove the report as a whole, and, if not disapproved as a whole, to sustain the exceptions of law thereto, and to set the case down for a hearing before a jury at the next term, as to the exceptions of fact. All these motions were overruled, and the court, after hearing argument on the exceptions, disapproved and dismissed them, and sustained and approved the report as a whole. To these rulings the defendant excepts and assigns error in this court. The defendant further excepts to the overruling of his motion to set aside the order allowing fees to the auditor; to the overruling of

his motion, made at the final hearing, to dismiss the plaintiffs' affidavit of foreclosure as void process, on several grounds; and to the disallowance, at the same time, of an amendment to the counter-affidavit. Under the direction of the court the plaintiffs proceeded to a jury and took a verdict in accordance with the auditor's findings, upon which the court entered a decree, making the verdict the decree of the court; and to this action also the defendant excepts. In addition to the amount of the claim set up in the proceeding to foreclose a lien as landlords, to wit $1,819.68, besides interest and attorneys' fees, a balance of $8,278.72 was found against the defendant, as the balance due by Mackenzie & Co., and by the defendant as a member of that firm, for which judgment was rendered against the defendant; and it was directed that the judgment for the last named amount be credited with the proceeds of such collaterals remaining in the hands of the plaintiffs to secure this indebtedness as had been collected since the hearing before the auditor, with interest to the date of judgment on the verdict, and such as might afterwards be collected, to be credited as soon as collected. The deeds attacked by the defendant were found and decreed to be absolute and valid conveyances.

1. It was complained that the defendant was denied his right to a trial by jury of the issues of fact raised by his exceptions to the auditor's report, and that the action of the court in directing a verdict was erroneous, notwithstanding the statute of October 16th, 1885, which declares that it shall be the duty of the judge to examine the report, and if it does not appear that error has been committed, he shall approve the report and dismiss the exceptions, and a verdict shall be taken in accordance with the findings of the auditor. (Acts 1885, p. 98.) It was insisted that the court erred in applying to the case this provision of the act, because

it has been held unconstitutional except as to equity cases, and because this is not an equity case, but merely " a proceeding on the law side of the court with an equitable defence."

Undoubtedly if this had remained merely " a proceeding on the law side of the court," the defendant would have been entitled to have the issues of fact passed upon by a jury, notwithstanding this statute. *Poullain* v. *Brown*, 80 *Ga.* 30. But by his equitable plea a complete change in the nature of the case was effected. It became as much a cause in equity as if he had instituted a separate proceeding for equitable relief. This plea was not merely a defence to the statutory proceeding, and its purpose was not confined to the defeat of that proceeding. It brought before the court matters outside of the scope of such a proceeding, and sought the administration of relief which could be granted only in the exercise of the equitable powers of the court. It was a petition for injunction and the appointment of a receiver, for an accounting and an auditor, for the cancellation of deeds, the return of collateral security, etc. And as a basis for this relief, it set up transactions antecedent to the account sued on, extending through a period of several years before the relation of landlord and tenant was claimed to have begun, and the investigation of which required an examination into numerous and complicated matters of mutual account, involving many thousands of dollars. The introduction of this plea led to responsive pleadings by the plaintiffs, in which was set up, among other things, a claim for a balance due them by Mackenzie & Co. of $11,377.78, besides the $1,819.68 claimed as due by the defendant for supplies furnished him as tenant. The defendant, moreover, offered to "do equity and pay or secure to the plaintiffs what he may justly owe them," and stated that " if upon a just accounting it should be shown that he

is indebted to the plaintiffs $13,000, he is willing that the land shall stand as security for that sum," etc. Under these pleadings the claim of $1,819.68 sought to be enforced in the statutory proceeding, became merely a subsidiary factor in the general accounting, which accounting was granted in the exercise of the equitable powers of the court as a mode of administering the relief appropriate to the whole case as made by the pleadings. The auditor acted, therefore, as the arm of a court of chancery, and the case as presented to the court upon the consideration of his report was clearly a case in equity. It follows that the court below did not err in applying to the case the provisions of the act of 1885, which has been held unconstitutional only as to cases at law. As to its constitutionality as applied to equity cases, no question has been raised.

In support of the contention that the case should have been treated as legal rather than equitable, reference was made to the "uniform procedure act" of 1887, (Acts 1887, p. 64.) This act, however, does not go to the length of abolishing all distinction between legal and equitable remedies and relief and the modes of administering them. Except in providing that both kinds shall be applied for by one form of petition, and may be administered by the court in one and the same proceeding, it leaves the mode of trial as to each unchanged. The purpose of the act was to enable parties to approach the court as a single instead of a dual forum, and by a uniform mode of procedure, whether the relief sought was legal or equitable, and to enable the court, on the trial of any civil case, to "give effect to all the rights of the parties, legal or equitable or both," and apply such "remedies or relief, legal or equitable or both, in favor of either party, as the nature of the case may allow or require." It did not curtail any of the judge's powers as chancellor. If the case was one in which,

before the adoption of this act, he could administer relief without a jury to try the issues of fact upon which the relief depended, the act did not deprive him of that power. As to the effect of similar statutes as construed in other States, see Bliss, Code Pleading, §§4, 5, 10; 1 Pom. Eq. Jur. (ed. 1892), §354. And as to trial by jury where legal and equitable relief are sought in the same proceeding, see Cogswell *v.* R. Co., 105 N. Y. 319; Bergman *v.* Ry. Co., 14 N. Y. Supp. 384.

2. The order of reference says: "As the case is largely a matter of account, it is ordered that the case be referred to an auditor for determination." Under this order the whole case in the matter of accounting, as presented by the pleadings, was submitted to him. The defendant, as we have seen, prayed for a general accounting, and to this end prayed also the appointment of an auditor. This general accounting was had, and the defendant was heard before the auditor and intro. duced evidence as to all the matters involved. After the auditor had filed his report, finding a balance upon the general accounting in addition to the $1,819.68 claimed in the proceeding to enforce a landlord's lien, the defendant moved that the report be recommitted for correction and further finding, upon the ground that the auditor had exceeded his jurisdiction in finding as to any other matter of account than the claim made in the foreclosure proceeding. It is clear that the court did not err in overruling this motion.

3, 4. The exceptions to the overruling of the defendant's motion, made at the final hearing, to dismiss the affidavit of foreclosure, and to the disallowance at the same time of an amendment to the counter-affidavit, are ruled upon in the 3rd and 4th head-notes to this opinion.

5–7. The evidence taken before the auditor and by reference made a part of his report, not having been

sent up in the record, this court cannot determine that the court below erred in overruling exceptions of fact to the auditor's report, nor in overruling exceptions to findings of law the correctness of which depends upon the existence of particular facts which might have been established by the evidence. It is incumbent upon the party complaining to show error. We must assume, therefore, in the absence of any clear showing to the contrary, that the findings of the auditor, as approved by the court below, were correct. Without the evidence upon which the report was based, we cannot determine that the auditor erred in finding that the deeds attacked by the defendant were what they appear on their face to be—absolute conveyances and not merely security for a debt. Nor can we determine, without reference to the evidence, whether the taking of eight per cent. interest in advance by way of discount was usurious. Eight per cent. was legal if agreed upon in writing (Code, §2050); and it is well settled that the taking of interest in advance on short loans in the usual and ordinary course of business is not usurious, if the interest reserved does not exceed the legal rate. Tyler on Usury, 155, 156. Nor have we any means of ascertaining whether the contract to pay "shortage" on cotton, stated in the 6th head-note, was intended as a cover for usury. Such a contract is not *per se* usurious. After a careful examination of the able and elaborate report of the auditor, we have failed to discover error in any of the numerous findings upon which error is assigned.

8. The auditor properly declined to consider a claim for damages arising *ex delicto* from an alleged excessive levy in the foreclosure proceeding. Such damages were not a proper element to be embraced in the account taken by the auditor.

9. It was complained that the court erred in assessing against the defendant the entire amount of the auditor's

fee in advance of the verdict of the jury, from whom a recommendation would have been claimed to apportion the amount. Under §4204 of the code it was within the discretion of the court, there being no agreement between the parties as to the auditor's fee, to fix his compensation, and to determine in what proportion it should it should be borne by the respective parties, or whether the whole of it should be paid by one of them.

10. Where a petition is filed on the equity side of the court, praying for a general accounting between the parties, and the matter is referred to an auditor, he may find a balance in favor of the defendant, without any special prayer in his pleadings for a decree in his behalf. Goldthwait *v.* Day, 149 Mass. 185; Wyatt *v.* Sweet, 48 Mich. 539. And see Pulling on Accounts, 156, 165; Mitf. & Tyl. Eq. Pl. & Pr. (ed. 1878), p. 215; Seaton, Decrees (1 Am. from 4 Eng. ed. 1884), 431, 434; 1 Am. & Eng. Enc. L. 1015. The defendant in this case having prayed a general accounting, and offered to do equity and to pay the plaintiffs whatever balance might be found to be due them, the auditor could find a balance in favor of the plaintiffs, although there was no prayer in their pleadings for a decree in their behalf.

11. The exception to the finding against Mackenzie & Co., on the ground that Mackenzie only was a party to the case, is ruled upon in the 11th head-note.

The affirmance of the main bill of exceptions renders it unnecessary to consider the cross-bill of Flannery & Co.                    *Judgment affirmed.*